# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| JEANNE HANIE and ISSAC HANIE, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:06-CV-889-RWS |
| CITY OF WOODSTOCK, GEORGIA, DAVID SCHOFIELD, POLICE CHIEF, SCARLET WOODS, and DANIEL RICHARD ESCHER, | : | |
| | : | |
| Defendants. | : | |

## ORDER

This case comes before the Court on Defendants' First Motion for Summary Judgment [44].  After reviewing the entire record, the Court enters the following Order.

### Background

Plaintiffs Jeanne Hanie and Issac Hanie brought this action against the City of Woodstock, its police chief, David Schofield, and two of its police officers, Lieutenant Scarlet Woods and Officer Daniel Richard Escher.

Plaintiffs allege that Officer Escher and Lt. Woods entered their home illegally, arrested Plaintiffs without probable cause, and used excessive force in effectuating those arrests.  In addition to bringing a claim under 42 U.S.C. § 1983, Plaintiffs allege claims for battery, trespass, false imprisonment, and intentional infliction of emotion distress.  This case comes before the Court on Defendants' Motion for Summary Judgment.  As such, the Court considers the evidence in a light most favorable to Plaintiffs.

On November 20, 2005, at approximately 6:00 in the evening, Ms. Hanie and Issac Hanie were home at their Woodstock residence.  As Ms. Hanie cooked supper in the kitchen, Issac was busy repairing the back door.  He used a hammer and circular saw.  The noise of his handiwork could be heard from outside the Hanie residence.  A neighbor caring for a sick child was irritated by the cacophony and so she called the police.  Officer Escher and Lt. Woods responded to the scene.

Lt. Woods arrived at the Hanie residence first.  She knocked on the front door.  Ms. Hanie answered the door, opening it only partially to find Lt. Woods outside.  Ms. Hanie stood behind the door with her right hand on the interior door knob and spoke with Lt. Woods.  Lt. Woods informed Ms. Hanie that the

2

police department had received a noise complaint from a neighbor and asked her whether she had been playing loud music.  Ms. Hanie answered negatively, explaining instead that her son had been working on the back door and was banging a hammer.  She also informed Lt. Woods that Woodstock's noise ordinance did not come into effect until 7:00 P.M., and thus she was not in violation.

Around that time, Officer Escher arrived on the scene and stepped up to the Hanies' porch.  With Officer Escher behind her, Lt. Woods asked Ms. Hanie if she and Officer Escher could come into the house to investigate.  Ms. Hanie said "no."  Lt. Woods then asked, "well, what have you got to hide?"  Ms. Hanie responded that she had nothing to hide, but that she was in the middle of cooking dinner and needed to go.  Ms. Hanie became frustrated with Lt. Woods, arguing that she had done nothing wrong and was not in violation of the noise ordinance.

As Ms. Hanie and Lt. Woods argued, Officer Escher interrupted to tell Ms. Hanie to "shut up and be quiet and let [Lt. Woods] finish."  (Jeanne Hanie Dep. at 29.)  Issac Hanie, hearing some of the commotion at the front of the house, walked to the front door.  He asked Lt. Woods and Escher if they had a

warrant to search the house.  Lt. Woods replied "no."  Issac Hanie then returned to the back of the house.   Ms. Hanie invited Lt. Woods to walk around the side of the house to the back door to observe her son's repair work.  As she moved the door forward to close it further, Lt. Woods stepped forward and stuck her foot into the doorway—onto the threshold of the door—to prevent it from closing.  (See Dep. of Jeanne Hanie at 26-27; Defs.' St. of Mat. Facts ¶ 7.)  "[T]he middle of [Lt. Woods'] foot was on the threshold, and a small portion of her foot was over the threshold."  (Jeanne Hanie Dep. at 31.)

After noticing that his mother's noodles were boiling over, Issac Hanie returned to the front of the house and advised his mother that the officers did not have a warrant and so she should "go ahead and shut the door."  (Issac Hanie Dep. at 18.)  Officer Escher then lunged forward, busting through the door.  The force of his entry knocked Ms. Hanie to the floor onto the bottom of the stairway.  As a result of her fall, Ms. Hanie sustained injuries to her back, wrist, and hip.

After fully entering the house, Officer Escher moved towards Issac Hanie and bumped Issac Hanie with his chest up against a wall.  Issac Hanie told Officer Escher that he was not allowed in his house and that he had violated his

4

civil rights.   After more arguing by Ms. Hanie, Officer Escher turned to Ms.

Hanie and "pointed his finger right in [her] nose and . . . screamed and hollered

at me and said shut up."  (Jeanne Hanie Dep. at 38.) Officer Escher made

contact with Issac Hanie only the single time he bumped chests with Issac.

(See Issac Hanie Dep. at 23-25.)

In the next few minutes the parties argued back and forth. The officers

did not search Issac or further walk through the house.  The officers did not

issue either Ms. Hanie or Issac Hanie a citation.  After a brief conversation they

turned around and left, stating that they were going to talk with the neighbors to

further investigate the noise complaint.

Some time later, Ms. Hanie visited the hospital and was diagnosed with a

sprained arm.   This action followed.

## Discussion

Defendants have moved for summary judgment on all of Plaintiffs'

claims.  After reviewing the relevant standard, the Court considers Defendants'

Motion as it relates to (1) Plaintiffs' claims against the City of Woodstock and

the individual Defendants in their official capacities; (2) Plaintiffs' claims under

5

42 U.S.C. § 1983 against Lt. Woods and Officer Escher; and (3) Plaintiffs'

state-law claims against Lt. Woods and Officer Escher.

## I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears

'the initial responsibility of informing the . . . court of the basis for its motion,

and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.'"

Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986) (internal quotations omitted)).  Where the moving party makes

such a showing, the burden shifts to the non-movant, who must go beyond the

pleadings and present affirmative evidence to show that a genuine issue of

material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257,

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106

S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or

is not significantly probative, summary judgment may be granted."  Anderson,

477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at

7

586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.    Claims Against the City of Woodstock, Chief Schofield, and Lt. Woods and Officer Escher in their Official Capacities

In commendable fashion, Plaintiffs concede that the City of Woodstock and Chief Schofield are entitled to summary judgment in this action.  (See Pls.' Br. in Resp. to Defs.' Mot. for Summ. J. [45-1] at 6-7.)  Plaintiffs also concede that they cannot sustain claims against Lt. Woods and Officer Escher in their official capacities.  Accordingly, insofar as Defendants move for summary judgment on all claims against the City of Woodstock and Chief Schofield and on Plaintiffs' claims against Lt. Woods and Officer Escher in their official capacities, Defendants' Motion is **GRANTED**.

## III.   Section 1983 Claims Against Lt. Woods and Officer Escher

Lt. Woods and Officer Escher raise qualified immunity as a defense to Plaintiffs' claims under § 1983 against them in their individual capacities.

### A.    The Law of Qualified Immunity

Qualified immunity provides "complete protection for government

8

officials sued in their individual capacities if their conduct 'does not violate

clearly established statutory or constitutional rights of which a reasonable

person would have known.'"  Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th

Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727,

73 L. Ed. 2d 396 (1982)).  Its purpose is to "allow government officials to carry

out their discretionary duties without the fear of personal liability or harassing

litigation, protecting from suit all but the plainly incompetent or one who is

knowingly violating the federal law."  Lee v. Ferraro, 284 F.3d 1188, 1194

(11th Cir. 2002) (internal quotation marks and citations omitted).

Qualified immunity is a question of law for the court.  Post v. City of Fort

Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).  To be entitled to qualified

immunity, the public official "must first prove that he was acting within the

scope of his discretionary authority when the allegedly wrongful acts occurred."

Lee, 284 F.3d at 1194.  The burden then shifts to the plaintiff.  Id.  There is a

two-part test to determine whether a defendant is entitled to qualified immunity.

First, a court asks " 'whether [the] plaintiff's allegations, if true, establish a

constitutional violation.' "  Vinyard, 311 F.3d at 1346 (quoting Hope v. Pelzer,

536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).  Where the issue of

qualified immunity is presented on summary judgment, the Court resolves all

disputed facts in favor of the plaintiff, and it decides whether the supposed facts

amount to a violation of Plaintiff's constitutional rights.  Purcell v. Toombs

Countyl, 400 F.3d 1313, 1320 (11th Cir. 2005).  Second, after sufficiently

stating a constitutional violation, a court must ask whether the right was

"clearly established."  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150

L. Ed. 2d 272 (2001).  A right is clearly established if its contours are

"sufficiently clear that a reasonable official would understand what he is doing

violates that right."  Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034,

97 L. Ed. 2d 523 (1987).  The salient question is whether the state of the law at

the time of the alleged violation gave officials "fair warning" that their acts

were unlawful.  Hope, 536 U.S. at 740; Holmes v. Kucynda, 321 F.3d 1069,

1078 (11th Cir. 2003); see also Vinyard, 311 F.3d at 1350-53 (articulating a

tripartite analytical framework for ascertaining whether right is "clearly

established").

　　　　While materially similar precedent or "broad statements of principle" can

establish a right with sufficient clarity to deny an officer qualified immunity,

they are not in all instances required to provide officials with the requisite

notice.  See Vinyard, 311 F.3d at 1350-52.  In some cases, "the words of a

federal statute or federal constitutional provision may be so clear and the

conduct so bad that case law is not needed to establish that the conduct cannot

be lawful."  Id. at 1350.

    With these foundational principles in mind, the Court turns to examine

the merits of Plaintiffs' individual-capacity claims against Lt. Woods and

Officer Escher.

**B.    Whether the Allegations, if Proven, Amount to a Violation of the Fourth Amendment**

    Both Ms. Hanie and Isaac Hanie contend that Lt. Woods and Officer

Escher violated their rights under the Fourth Amendment by entering their

home without a warrant, by falsely arresting them, and by using excessive force

in effectuating their arrests.  In response, Lt. Woods and Officer Escher argue

that they are entitled to qualified immunity because exigent circumstances

existed to enter the home, no seizure of their person occurred, and any force

used to effectuate the arrest was de minimus.  Moreover, Defendants contend,

the law was not clearly established at the time of the incident to put Lt. Woods

and Officer Escher on notice that their conduct violated the Fourth

11

Amendment.[1]  For the reasons expressed below, the Court concludes that

Defendants are not entitled to qualified immunity.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and seizures,
> shall not be violated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation, and particularly
> describing the place to be searched, and the persons or things to be
> seized.

U.S. CONST. AMEND. IV.

The Fourth Amendment's warrant requirement renders it "beyond dispute

that the home is entitled to special protection as the center of the private lives of

our people."  Georgia v. Randolph, 547 U.S. 103, 126 S. Ct. 1515, 1523-24,

164 L. Ed. 2d 208 (2006).   As such, "[i]t is a 'basic principle of Fourth

Amendment law' that searches and seizures inside a home without a warrant are

presumptively unreasonable."  Payton v. New York, 445 U.S. 573, 586, 100 S.

Ct. 1371, 63 L. Ed. 2d 639 (1980) (quoting Coolidge v. New Hampshire, 403

U.S. 443, 477, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971)); see also Welsh v.

---

[1]  Plaintiffs do not dispute that Lt. Woods and Officer Escher were acting within the scope of their discretionary authority at the time of the incident which gave rise to this suit.

AO 72A
(Rev.8/82)

Wisconsin, 466 U.S. 740, 748, 104 S. Ct. 2091, 80 L. Ed. 2d 732 ("It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.") (citation and quotation omitted).

The Supreme Court has made clear that the warrant requirement contained in the Fourth Amendment "has drawn a firm line at the entrance to the house." Payton, 445 U.S. at 589-90. Therefore, any warrantless physical invasion of one's home—even if by only "a fraction of an inch"—violates the Fourth Amendment if it does not fall within an accepted exception. Kyllo v. United States, 533 U.S. 27, 37, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001). Indeed, even the slightest warrantless incursion, the Supreme Court has explained, violates the Fourth Amendment:

> The Fourth Amendment's protection of the home has never been tied to measurement of the quality or quantity of information obtained . . . . [F]or example, we [have] made clear that *any* physical invasion of the structure of the home, "*by even a fraction of an inch*," was too much, and there is certainly no exception to the warrant requirement for the officer who barely cracks open the front door and sees nothing but the nonintimate rug on the vestibule floor. In the home, our cases show, all details are intimate details, because the entire area is held safe from prying government eyes.

13

Id. (citations and quotations omitted).

Two "jealously and carefully drawn" exceptions exist to the Fourth Amendment's warrant requirement.  McClish v. Nugent, 483 F.3d 1231, 1240 (11th Cir. 2007).  Id.  First, a citizen may consent to an officer's warrantless entry into her home.  McClish v. Nugent, 483 F.3d 1231, 1240 (11th Cir. 2007). Second, an officer may enter a home without a warrant when "exigent circumstances" exist, that is, in "situations in which 'the delay incident to obtaining a warrant must give way to an urgent need for immediate action.'" Id. at 1240.  "The exigent circumstances exception to the [F]ourth [A]mendment warrant requirement applies in 'those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate.'"  United States v. Blasco, 702 F.2d 1315, 1325 (11th Cir.1983) (citations and quotations omitted).  Exigent circumstances exist where, for example, an officer enters "to break up a violent fight, to prevent the destruction of evidence, to put out a fire in a burning building, to pursue a fleeing suspect, to rescue a kidnapped infant, [or] to attend to a stabbing victim."  Id. at 1240-41 (citations omitted).   Under either consent or exigent circumstances, an officer

14

who conducts a warrantless search or seizure inside the home bears the burden of proving that his conduct was justified.  Id. (citing Sammons v. Taylor, 967 F.2d 1533, 1543 (11th Cir. 1992)).

To sum up the law of the Fourth Amendment, therefore, it can be fairly said that the Supreme Court has set forth a bright-line rule.  Police without a warrant may not cross the threshold of a person's home without consent or exigent circumstances.  Payton, 445 U.S. at 576.  Or as the Eleventh Circuit has put it, even though "an officer may view a subject in the interior of a home through an open door," that "does not alter the basic rule that a warrantless entry into the home to effect an arrest is prohibited absent consent or exigent circumstances."  McClish, 483 F.3d at 1248.

Turning to the facts of this case, the bright-line rule of Payton compels the conclusion that the conduct of Lt. Woods and Officer Escher was presumptively unreasonable.  Payton, 445 U.S. at 576.  Both Lt. Woods and Officer Escher physically invaded the Hanies' home without a warrant. Accordingly, the burden shifts to Lt. Woods and Officer Escher to demonstrate that Ms. Hanie consented to entry to the home or exigent circumstances existed to justify a warrantless entry.

15

As to consent, it is clear that no consent was present in this case.  Indeed, Lt. Woods and Officer Escher do not contend that Ms. Hanie consented to the entry of her home.  In any event, Ms. Hanie manifested her intent to keep the inside of her home private by only partially opening the front door during her conversation with the officers and by explicitly refusing their request to enter the house.  Ms. Hanie also demonstrated that she wished to end her conversation with the officers when she attempted to close the door, but she was prevented from doing so by the presence of Lt. Woods' foot in the doorway.

Second, exigent circumstances did not exist to justify entry into the Hanies' home.  Defendants' entire effort to meet their burden of demonstrating the presence of exigent circumstances is the following:  "The circumstances of this case do not involve entry of a home to search or seize but instead show exigent circumstances relating [sic] the safety of Lt. Woods, as perceived by officers [sic] Escher, whose crossing of the threshold was not to search or detain but was in follow-through of his pushing the door."  (Defs.' Br. in Support of Mot. for Summ J. at 21.)[2]  That single sentence does not convince the Court that

---

[2] Defendants offer no argument in their reply that Officer Escher and Lt. Woods' entry was constitutionally permissible based upon exigent circumstances.  Rather, Defendants focus solely on the question of whether such a violation was clearly

exigent circumstances existed to justify either Lt. Woods' initial warrantless entry into the home by placing her foot beyond its threshold[3] or Officer Escher's subsequent warrantless invasion of the home after Issac Hanie encouraged his mother to shut the door.  Although Officer Escher contends that Lt. Woods was placed at risk of having a door closed on her foot, nothing in the record indicates that Ms. Hanie's conduct was aggressive or threatening or that any imminent action by Ms. Hanie would place Lt. Woods at serious risk and create "an urgent need for immediate action."  McClish, 483 F.3d at 1241. Rather, viewed in a light most favorable to Plaintiffs, the evidence indicates that Officer Escher entered the Hanies' house as the result of Issac Hanie's

---

established at the time of the incident.  (See Defs.' Reply in Supp. of Mot. for Summ. J. at 7-8.)

Defendants also contend in their reply that there is no record evidence that establishes that Isaac Hanie had "any ownership interest" in the home, and thus "he has no basis to assert a claim for illegal entry."  Although the law is clear that one need not have an ownership interest in a home to be entitled to the protections of the Fourth Amendment, see United States v. Freire, 710 F.2d 1515, 1519 (11th Cir. 1983) (stating "mere ownership is not the talisman for fourth amendment jurisprudence"), Defendants failed to raise this argument in their moving brief and thus it is not properly before this Court.  See Herring v. Sec'y Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005).

[3] Indeed, Lt. Woods does not offer any argument that exigent circumstances existed at the time she placed her foot across the threshold.  Rather, the exigency which Defendants claim existed at the time of Officer Escher's entry was *created by* Lt. Woods' initial unlawful step into the Hanies' doorway.

17

statement to Ms. Hanie that she should close the door, rather than by Ms.

Hanie's conduct.  The situation confronted by Defendants did not create the

extraordinary exigency that would justify departing from the Fourth

Amendment's warrant requirement.

In sum, because there is no dispute that Officer Escher and Lt. Woods

entered the Hanies' home without a warrant and without consent, and because

they did so in the absence of exigent circumstances, the Hanies have stated a

Fourth Amendment violation.

###    C.    Whether the Right is Clearly Established

Having determined that the Hanies' allegations, if proven, amount to a

violation of the Fourth Amendment, the Court must examine whether the right

for which they seek vindication is clearly established.  The salient question is

whether the state of the law at the time of the alleged violation gave officials

"fair warning" that their acts were unlawful.  Hope, 536 U.S. at 740.

In the Court's view, the bedrock Fourth Amendment principles

announced in Payton, Welsh, and Kyllo place any reasonable officer on fair

notice that even the slightest warrantless intrusion into a person's home without

arguable consent or arguable exigent circumstances violates the Fourth

AO 72A
(Rev.8/82)

Amendment.  Indeed, "*any* physical invasion of the structure of the home, *by even a fraction of an inch*," is too much.  <u>Kyllo</u>, 533 U.S. at 37 (emphasis added).  Lt. Woods was on fair notice that she could not place her foot even a fraction of an inch into the structure of the Hanies' home.  By doing so without consent and in the absence of exigent circumstances, she violated clearly established rights protected by the Fourth Amendment.  Lt. Woods is not entitled to qualified immunity.

For largely the same reasons, Lt. Escher is not entitled to qualified immunity.  When viewed in a light most favorable to Plaintiffs, there is no arguable basis to believe that exigent circumstances existed to justify Officer Escher's conduct in bursting through the door, knocking Ms. Hanie to the ground, and bumping Issac Hanie up against the wall.  Lt. Escher did not have any basis to believe that a felony had been committed.[4]  Nor is there any evidence in the record that Ms. Hanie—unarmed and standing behind a slightly

---

[4] Even assuming the Hanies had violated the county noise ordinance, such a violation could not serve as the basis to enter a home.  The Supreme Court has held that it is generally unconstitutional to enter a home to effectuate an arrest based upon the recent commission of misdemeanor, even where the misdemeanant has fled from a public place into the home.  <u>Welsh</u>, 466 U.S. at 753 (stating "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense, such as the kind at issue in this case, has been committed").

19

opened door with noodles cooking—presented a threat to officer safety.  Cf.

McClish, 483 F.3d at 1246.

Accordingly, insofar as Defendants move for summary judgment on

Plaintiff's claims under 42 U.S.C. § 1983, Defendants' Motion is **DENIED**.[5]

### C.    State Law Claims

Defendants also move for summary judgment on Plaintiffs' state law

claims.[6]  The Georgia Constitution provides that state officers and employees

"may be liable for injuries and damages if they act with actual malice or with

actual intent to cause injury in the performance of their official functions." GA.

CONST., art. I, § 2, ¶ IX(d).  Plaintiffs do not dispute that Defendants were

acting in the performance of their discretionary duties as state officials at the

time of the incident which gave rise to this action.  Thus, to pierce the officers'

---

[5] Plaintiffs also contend that Lt. Woods and Officer Escher falsely arrested them and used excessive force after illegally entering their home.  Because Plaintiffs have successfully stated a claim for illegal entry into the home, any injuries that are sustained as a result of a false arrest within the home or force used against Plaintiffs inside of the home are compensable under the same theory.  See Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000) (merging separate theories of Fourth Amendment violations as single claim); Bashir v. Rockdale County, Ga., 445 F.3d 1323 (11th Cir. 2006) (same).

[6] Those claims include battery, trespass, false imprisonment, and intentional infliction of emotion distress.

official immunity, Plaintiffs must demonstrate they acted with actual malice.

<u>Adams v. Hazelwood</u>, 271 Ga. 414, 520 S.E.2d 896, 898 (1999).  The Supreme

Court of Georgia has explained that "'actual malice' requires a deliberate

intention to do wrong and denotes 'express malice or malice in fact.'"  <u>Id.</u>

(quoting <u>Merrow v. Hawkins</u>, 266 Ga. 390, 467 S.E.2d 336, 338 (1996))

(citation omitted).

      Plaintiffs argue that a jury could determine that Officer Escher committed

battery with actual malice based upon Officer Escher's conduct in running

through, as opposed to merely pushing, the Hanies' front door, and contend that

they do not have to demonstrate that actual malice accompanied Defendants'

acts of false imprisonment, trespass, or intentional infliction of emotional

distress.  However, Plaintiffs have not directed the Court to any authority which

would dispute the Georgia Constitution's clear mandate that actual malice is

required to overcome official immunity.

      Having thoroughly reviewed the record in a light most favorable to

Plaintiffs, the Court concludes that no evidence supports the inference that Lt.

Woods or Officer Escher possessed a "deliberate intention to do wrong" in

entering the Hanie home and briefly questioning the Hanies concerning the

noise complaint.  Accordingly, insofar as Defendants move for summary judgment on Plaintiffs' claims of battery, trespass, false imprisonment, and intentional infliction of emotional distress, their Motion is **GRANTED**.[7]

### Conclusion

For the foregoing reasons, Defendants' First Motion for Summary Judgment [44] is **GRANTED in part and DENIED in part**.  It is granted insofar as Defendants seek judgment as a matter of law on all of Plaintiffs' claims against the City of Woodstock and Chief Schofield and on Plaintiffs' claims against Lt. Woods and Officer Escher in their official capacities.  It is also granted insofar as Defendants seek judgment as a matter of law on Plaintiffs' state law claims against Lt. Woods and Officer Escher.  It is denied insofar as Defendants seek judgment as a matter of law on Plaintiffs' claim brought under 42 U.S.C. § 1983 against Lt. Woods and Officer Escher.

---

[7] Defendants also move for summary judgment on Plaintiffs' prayer for punitive damages, contending that Plaintiffs are not entitled to punitive damages under O.C.G.A. § 51-12-5.1(b).  Having concluded that Defendants are entitled to official immunity, Defendants' request for judgment as a matter of law on the question of whether Plaintiffs may seek punitive damages vis-a-vis Plaintiffs' state law claims is moot.

Defendants do not request judgment as a matter of law on Plaintiffs' demand for punitive damages for Defendants' violation of 42 U.S.C. § 1983 and offer no discussion on that subject.  Having failed to raise the issue, the Court expresses no opinion on whether Plaintiffs may seek punitive damages at trial on their remaining § 1983 claim.

AO 72A
(Rev.8/82)

**SO ORDERED** this   19th   day of February, 2008.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)